UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SARA CLARK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 17-273-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TEAMSTERS LOCAL UNION 651, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The defendants have moved to dismiss the claims contained in the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 8] For the reasons that follow, the Court will grant, in part, the defendants' motion. The counts alleging wrongful termination, civil conspiracy, and destruction of evidence will be dismissed, with prejudice, while other counts shall remain pending.

**I.**

Plaintiff Sara Clark "(Clark") is a former employee of Teamsters Local Union 651 ("Local 651") located in Lexington, Kentucky. She was hired in 2008 to work as the Finance and Benefits Coordinator. [Record No. 1, ¶ 11] Clark paid union dues to the International Brotherhood of Teamsters ("IBT") until March, 2017, when her employment was terminated at Local 651. [*Id.* at ¶ 13] Plaintiff Carol Estepp '(Estepp") has been employed as the Dues Coordinator with Local 651 since 2012. [*Id.* at ¶ 15] Estepp is a member of the IBT and, as of the filing of the Complaint, has paid her dues through June 2017. [*Id.* at ¶ 16]

- 1 -

The plaintiffs filed this action against Defendants Local 651, Michael Philbeck, and IBT. Both plaintiffs have asserted claims alleging violations of the Labor-Management Reporting Disclosure Act ("LMRDA") (Count I), civil conspiracy (Count VII), hostile work environment (Count VIII), and for recovery of overtime compensation (Count IX), while Clark has made additional claims of wrongful termination (Count II), defamation (Count III), invasion of privacy (Count IV), unlawful access to computer (Count V), and destruction of evidence (Count VI). [*See* Record No. 1.] The plaintiffs allege that that they exercised rights under the LMRDA by reporting various improper and wrongful actions of Philbeck to the Executive board, the Local's secretary treasurer, IBT, and general members of Local 651. [*Id.* at ¶ 78] They contend that they were thereafter subjected to various forms of discipline from Philbeck, such as Clark's termination of employment from the union and threats made to Estepp, which violated the LMRDA. [*Id.* at ¶¶ 78-82]

In Count II, Clark alleges wrongful termination of her employment. [*Id.* at ¶ 91] She also contends that Philbeck made false and defamatory statements about her, including statements made to the Executive Board, auditors from the IBT, and in a letter to an officer of the Local (Count III). [*Id.* at ¶ 95] Clark asserts that Philbeck and/or an employee of Local 65, while under the IBT's direct control and supervision, accessed her personal Dropbox account without her permission, changed her password, and destroyed evidence relevant to this litigation (Counts IV through Count VII). [*Id.* at ¶¶ 99-118]

Both plaintiffs contend that Local 651, IBT, and Philbeck conspired to violate their rights to seclusion, privacy, and personal property by accessing Clark's Dropbox account, destroying evidence, creating and fostering a hostile work environment, and violating the LMRDA (Count VII). [*Id.* at ¶ 119-122]

Next, both plaintiffs assert that, throughout their employment at Local 651, they were subjected to and present as Current Local 651 President Michael Philbeck ('Philbeck") used derogatory language towards and about women, including calling female company representatives "bitches", and used profanity-laces diatribes when accusing plaintiffs of minor violations of his directives. [*Id.* at ¶ 21] They contend that, as a result of this conduct, they were subjected to a workplace permeated with continuous, on-going, and concerted sexual discriminatory intimidation, ridicule, and insult creating a hostile working environment in violation of Title VII of the Civil Rights Act (Count VIII). [*Id.* at ¶ 124] Finally, the plaintiffs allege that the defendants did not pay them for all hours worked over forty hours per week in violation of KRS § 337 and 29 U.S.C. § 201 *et seq.* (Count IX). [*Id.* at ¶ 132-133]

## II.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the complaint states a viable claim for relief. Simply put, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a complaint need not contain detailed factual allegations, it must contain more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

# III.

## A. The LMRDA Claims

"Congress enacted Title I of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 411-415, to provide union members with a right to freedom of expression that would in turn help ensure that unions would be democratically governed. *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997) (citing *Finnegan v. Leu*, 456 U.S. 431, 435-36 (1982)). To this end, Section 609 of the LMRDA makes it unlawful for a labor organization to fine, suspend, expel, or otherwise discipline a member for exercising any right she is entitled to under the Act. 29 U.S.C. § 529. The term "discipline" "refers only to retaliatory actions that affect a union member's rights or status as a member of the union." *Finnegan*, 456 U.S. at 438. In *Finnegan*, the Supreme Court held that the plaintiff could not maintain an action for improper "discipline" under § 609 because "discharge from union employment does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen to be union employees." *Id*. at 431.

The Sixth Circuit has consistently maintained the distinction between an individual's role as a member of a union and his or her role as an employee or appointed officer. In *Cehaich v. Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America*, a union employee brought a claim under the LMRDA alleging that his to free expression under Title I had been violated by his termination from union employment. 710 F.2d 234, 234 (6th Cir. 1983). The court noted that member and officer roles were "distinct", and "union action affecting one did not necessarily affect the other." *Id*. at 238. And since there was no fine, suspension, or disciplinary action that had been taken against the plaintiff, he could not

maintain an action under Section 609 because his "status as a member of the union remained unchanged after his dismissal from his position as a union officer." *Id*. Conversely, in *Thompson v. Office and Professional Employees Int'l Union, AFL-CIO*, the court upheld a judgment in favor of a dismissed union business representative. 74 F.3d 1492 (6th Cir. 1996). Unlike the facts in *Cehaich*, the plaintiff in *Thompson* was expelled from union membership immediately after his termination from his position in the union, thus equating to discipline "in a manner which affected his right to fully enjoy the rights and privileges of union membership." *Id*. at 1503.

In addition to Section 609, Section 102 of the LMRDA provides a right of action to members "whose rights . . . have been infringed . . . ." 29 U.S.C. § 412. The Supreme Court has stated that a claim might arise from the dismissal of a union employee or official if it were "part of a purposeful and deliberate attempt to … suppress dissent within the union."[1] *Finnegan*, 456 U.S. at 441. Further, the Supreme Court noted in *Finnegan* that, when dealing with a Section 102 claim, "we leave open the question whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees." *Id*. at 441, fn. 11.

The plaintiffs claim that Clark's termination of employment and other discipline, and the Local's threat to Estepp "to stay out of politics and the IBT's indifference to the fears she raised in her letter," violates Sections 102 and 609 of the LMRDA. [Record No. 1, ¶¶ 77-82] Plaintiffs have stated a plausible claim for violations of the LMRDA. Clark has plausibly alleged that her termination is a form of discipline in violation of Section 609 or infringed on her rights in violation of Section 102. Additionally, Estepp has plausibly alleged that the

---

[1] This is not the exclusive means to establish a violation of Section 102. *See Sheet Metal Workers' Int'l Association v Lynn*, 488 U.S. 347, 355 fn. 7 (1989).

actions of Philbeck have infringed on her rights in violation of Section 102. While the Sixth Circuit has noted that "'plaintiffs face an uphill battle" under Section 102, *Harvey*, 113 F.3d at 644 (quoting *Stroud v. Senese*, 832 F. Supp. 1206, 1213 (N.D. Ill. 1993)), the burden has been met to survive a motion to dismiss under Rule 12.

B.     **Wrongful Termination**

Kentucky recognizes that an employer may terminate an "at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible (cases cited)." *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984). In *Firestone*, the Supreme Court of Kentucky outlined the limitations to the wrongful discharge exception, stating that "[e]mployers as a group have a legitimate interest to protect" which requires that "the cause of action for wrongful discharge [be] clearly defined and suitably controlled." *Id*. at 733.

That court reiterated the limitations to the exception in *Grzyb v. Evans*, finding that for the exception to apply "(i) the discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law; (ii) that policy must be evidenced by a constitutional or statutory provision; and (iii) the decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." 700 S.W.2d 399, 401 (Ky. 1985). The *Grazyb* court also identified two situations in which discharging an at-will employee would be so contrary to public policy as to be actionable, despite the absence of "explicit legislative statements prohibiting the discharge." *Id*. at 402. Those situation are: (i) where the alleged reason for the discharge of the employee was the employee's failure or refusal to violate a law in the course of employment; or (ii) when the

reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment. *Id*.

Clark only alleges that her "discharge was contrary to fundamental and well-defined public policy as evidenced by existing law in the statutory provision of the Commonwealth of Kentucky and the United states." [Record No. 1, ¶ 91] As was the case in *Grzyb*, the Complaint lacks even a passing reference to any specific constitutional or statutory provisions upon which Clark might base a claim. And it was not until the plaintiffs' fined their response to the motion to dismiss that a statutory provision was identified.

Clark contends that the circumstances alleged in the Complaint could reasonably be inferred to have violated KRS § 336.130, which provides that employees may, free from restraint or coercion, associate collectively to organize and form labor unions and prohibits unfair or illegal acts or practices or resorts to violence, intimidation, threats or coercion. *See* KRS § 336.130 (1), (2). She relies on *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU, AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801 (Ky. 1977), for the proposition that "[f]ailure to allow an employee to associate with a union in violation of KRS § 330.130 can be the basis for a wrongful termination claim." [Record No. 9, p. 11] But this reliance is misplaced.

*Pari-Mutuel* concerned labor disputes within the horse racing industry, over which the NLRB declines to assert jurisdiction, resulting in no preemption of the claim. Clark's claim for wrongful termination based on participation in union organizing activities does not involve the horse racing industry. Instead, it falls squarely under 29 U.S.C. § 157 and § 158, resulting in the exclusive jurisdiction residing with the NLRB. *See Methodist Hospital of Kentucky, Inc. v. Gilliam*, 283 S.W.3d 654, 656-57 (Ky. 2009) (dismissing a wrongful termination claim

based on KRS § 336.130 because it is federally preempted by 29 U.S.C. §§ 157, 158). Therefore, as the court held in *Gilliam*, Clark cannot rely on KRS § 330.130 for her wrongful termination claim.

Clark also appears to argue that her wrongful termination claim should be reasonably inferred to be based on her unwillingness to participate in, and report of, Philbeck's activity of withholding his 401(k) contributions and his alleged misuse of the Local's credit card. However, she does not assert that these actions were in violation of any specific constitutional or statutory provision as required for the exception to the terminable-at-will doctrine. *See Grzyb*, 700 S.W.2d at 401. The plaintiff wrongly claims there are two other reasons upon which a wrongful termination claim will lie: (i) where the alleged reason for the discharge of the employee was the employee's failure or refusal to violate a law in the course of employment; or (ii) when the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment. [Record No. 9, p. 11] She cites *Hill v. Kentucky Lottery Corp*, 327 S.W.3d 412, 422 (Ky. 2010), for this contention. However, these are not additional grounds for a wrongful termination claim. The *Grzyb* court identified these as the "only situations in which discharging an at-will employee would be so contrary to public policy as to be actionable despite the absence of 'explicit legislative statements prohibiting the discharge.'" *Id*. at 422 (quoting *Grzyb*, 700 S.W.2d at 401). These situations go to the first prong of the test set out in *Firestone* and reiterated in *Grzyb*. Clark has failed to identify any statutory or constitutional provision for the underpinning of the wrongful termination claim. Therefore, her claim will be dismissed for failing to state a plausible ground for recovery.

C. **Defamation**

In Kentucky, a claim of defamation consists of the following elements:

> (i) a false and defamatory statement concerning another; (ii) an unprivileged publication to a third party; (iii) fault amounting at least to negligence on the part of the publisher; and (iv) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (citing Restatement (Second) of Torts § 558 (1977)). The defendants argue that Clark has failed to set forth any defamatory statements "in content or context." [Record No. 8-1, pp. 6-7] They assert that "[t]hese omissions make a determination whether it was *plausible* that the comments could be defamatory and they could affect the Plaintiffs' name and reputation impossible." [*Id*. at 7] This argument fails to take into consideration all of the factual allegations contained in the Complaint and realleged in each Count. Specifically, the Complaint alleges that Philbeck posted a letter (attached to the Complaint as Exhibit 4) in the Union Hall which contained allegedly false allegations that Clark acted improperly with the Local's finances. [Record No. 1, ¶ 37] The Complaint also alleges that Philbeck and the Local's Vice President made allegedly false allegations that Clark was involved in improprieties relating to the union finances, which Philbeck allegedly repeatedly made from December 2016 to March 2017, and false statements regarding her personal relationship with a union member. [*Id*. at ¶¶ 38, 43, 49] Thus, the Complaint states a plausible claim of defamation.

### D. Invasion of Privacy and Unlawful Access to Computer

The Supreme Court of Kentucky has adopted the Restatement (Second) of Torts' definition of the invasion of privacy tort, which has four subtypes: (i) unreasonable intrusion upon the seclusion of another; (ii) appropriation of the other's name or likeness; (iii) unreasonable publicity given to the other's private life; and (iv) publicity that unreasonably places the other in a false light before the public. *McCall v. Courier-Journal and Louisville*

*Time Co.*, 623 S.W.2d 882, 887 (Ky. 1981). The Complaint states an invasion of privacy claim based on unreasonable intrusion upon seclusion. [Record No. 1, Count IV]

No Kentucky court in a published opinion has explained the elements required to prove unreasonable intrusion upon seclusion. However, in *Smith v. Bob Smith Chevrolet Inc.*, the Western District of Kentucky predicted that the Supreme Court of Kentucky would adopt the Restatement (Second) of Torts's definition. 275 F.Supp.2d 808, 822 (W.D.K.Y. 2003). This Court agrees with that analysis. According to this definition, an intrusion upon seclusion involves the "'intentional intrusion, physical or otherwise, upon the solitude or seclusion of another … if the intrusion would be highly offensive to a reasonable person.'" *Id*. (quoting Restatement (Second) of Torts § 652B (1977)). Therefore, under this definition, for Clark to state a claim for intrusion upon seclusion, she must allege: (i) an intentional intrusion by the defendants; (ii) into a matter the plaintiff has a right to keep private; and (iii) which is highly offensive to a reasonable person. *Id*.

To establish a claim of unlawful access to a computer, Clark relies on KRS § 446.070 (Kentucky's codification of the negligence *per se* doctrine) and KRS §§ 434.845-.853 (Kentucky Unlawful Access to a Computer criminal statute). Under KRS § 446.070, "a person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." The statute applies when the alleged offender violates a Kentucky statute that provides no remedy for the aggrieved party and the victim is within the class of person the statute intended to protect. *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011); *Thompson v. Breeding*, 351 F.3d 732, 737 (6th Cir. 2003).

The defendants argue that Clark has not established an ownership interest or expectation of privacy in the Dropbox account, thus defeating any claim under Count IV and

V. They rely on inferences raised in their motion to dismiss that the Dropbox account somehow belonged to Local 651. This inference is contingent on the idea that the Dropbox account existed on Clark's workplace computer, and in which Clark does not have an ownership interest. [Record No. 8-1, pp. 11-13; Record No. 11, pp. 7-8] This appears to be a misunderstanding of what Clark has alleged in the Complaint

Clark contends that the defendants accessed her "*personal Dropbox account*." [Record No. 1, ¶ 108, (emphasis added)] Just because the defendants allegedly accessed the personal Dropbox account using Clark's workplace computer, does not mean that the Dropbox account must plausibly only belong to the Local or solely exist on the computer. A Dropbox account allows a user to privately store and access files wherever they are, and be in ultimate control of who certain files are shared with, if anyone. *See* DROPBOX HELP CENTER, https://www.dropbox.com/help/sign-in/dropbox-overview (last visited Dec. 12, 2017). Clark has stated a plausible claim for intrusion upon seclusion and unlawful access to a computer sufficient to overcome the defendants' motion to dismiss these claims.

### E. Destruction of Evidence

The defendants contend that the Complaint fails to sufficiently plead a claim for destruction of evidence, relying in part on the holding in *Monsanto Co. v. Reed*, 950 S.W.2d 811 (Ky.1997). In *Monsanto*, the Supreme Court of Kentucky reversed the Kentucky Court of Appeals creation of a new cause of action for "spoliation of evidence." However, the claim that the plaintiffs are asserting is based on recovery through KRS § 446.070, which provides that a "person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty of forfeiture is imposed for such violation." The plaintiffs are claiming that they are entitled to recover due to the

alleged violation of KRS § 524.100, which prohibits the tampering with physical evidence, when believing that an official proceeding is pending a person "destroys, mutilates, conceals, removes, or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]"

For additional support, the defendants cite an unpublished Kentucky Court of Appeals decision which held that a violation of KRS § 524.100 raised through KRS § 446.070 had no basis in Kentucky law. *Brandy v. Norfolk Southern Ry. Co.*, No. 2005-CA-219, 2006 WL 1045491, at *3 (Ky. App. Mar. 31, 2006).

The plaintiffs' Complaint does not indicate on what basis, either common law or under a statute, the claim is brought. The plaintiffs contend in their response to the defendants' motion to dismiss that they are asserting a claim based on recovery through KRS § 446.070, which provides that a "person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty of forfeiture is imposed for such violation." The plaintiffs are claiming that they are entitled to recovery due to the alleged violation of KRS § 524.100, which prohibits the tampering with physical evidence, when believing that an official proceeding is pending a person "destroys, mutilates, conceals, removes, or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]" However, this exact claim to relief was denied by the court in *Brandy*. And the undersigned finds the holding in *Brady* to be persuasive here. While a claim of destruction of relevant materials may certainly give rise to a jury instruction regarding spoliation of evidence, it does not constitute a free-standing claim on its own right.

In light of the Supreme Court of Kentucky's holding in *Monsanto* and the Kentucky Court of Appeals decision in *Brandy*, the plaintiffs have failed to state a valid claim entitling them to relief under Kentucky law.

### F.  Civil Conspiracy

Civil conspiracy under Kentucky law is defined as "'a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means.'" *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255, 260-61 (Ky. Ct. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 264 Ky. 150, 94 S.W.2d 321, 325 (1936)).  A plaintiff must show an unlawful or corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act in order to prevail on a claim of civil conspiracy. *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995).  The damages must result "from some overt act done pursuant to or in furtherance of the conspiracy," not the conspiracy itself. *Davenport's Adm'x .v Crummies Creek Coal Co.*, 299 Ky. 79, 184 S.W.2d 887 (Ky. 1945)

The defendants argue that the plaintiffs' civil conspiracy claim is barred by the "intracorporate conspiracy doctrine," because the alleged co-conspirators are a corporation and its alleged agents.  Under the doctrine, "'a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves.'" *Cowing v. Commare*, 499 S.W.3d 291 (Ky. Ct. App. 2016).  The Supreme Court of Kentucky has not yet considered the "intracorporate conspiracy doctrine."  The Sixth Circuit, however, has predicted that the Supreme Court of Kentucky would apply the doctrine if faced with the issue. *Roof v. Bel Brands USA, Inc.*, 641 Fed.Appx. 492, 499 (6th Cir. 2006).

Applying Kentucky law, the Sixth Circuit found that "[t]his outcome is a logical extension of Kentucky law and would likely be breached by a Kentucky Court considering the issue 'a corporation can only act through its agents,' *Caretenders, Inc. v. Commonwealth*, 821 S.W.2d 83, 86 (Ky. 1991), and because a conspiracy involves more than one person, *see McDonald v. Goodman*, 239 S.W.2d 97, 100 (Ky. 1951)." *Id*. The Kentucky Court of Appeals considered the issue in Cowing, and found that the doctrine is a "logical extension of [Kentucky's] rules that 'a corporation can only act through its agents, and that a conspiracy involves two or more persons.'" *Cowing*, 499 S.W.3d at 294 (internal citations and quotations omitted). Although Kentucky Court of Appeals decisions are not binding on this Court, the decision is persuasive, and strengthens this Court's reliance on and prediction from *Roof*.

The doctrine is applicable in this case. The plaintiffs allege that "Local 651, IBT, and Philbeck entered into an unlawful/corrupt combination or agreement to violate the plaintiffs' rights to seclusion, privacy, and private property." [Record No. 1, ¶ 120] The plaintiffs insist that the Court should wait for discovery to conclude in order to decide if Philbeck and the Local were agents of IBT. However, the plaintiffs' Complaint alleges that at all relevant times herein, Local 651 and Philbeck "were acting as agents of the IBT." [*Id*. at ¶ 83] Additionally, the plaintiffs do not allege in the Complaint that the Local or Philbeck were acting outside of an agency capacity at any relevant time. The Court will accept all of the plaintiffs' allegations as true at this stage in the litigation. Therefore, the intracorporate conspiracy doctrine applies and bars the plaintiffs' civil conspiracy claim.

### G. Hostile Work Environment

"A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.,*

187 F.3d 553, 560 (6th Cir.1999). To establish a prima facie case of a hostile work environment based on sex, a plaintiff must demonstrate that: (i) she is a member of protected class; (ii) she was subjected to unwelcomed sexual harassment; (iii) the harassment was based on her sex; (iv) the harassment created a hostile work environment; and that (v) the employer is vicariously liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). "A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Randolph v. Ohio Dept. of youth Services*, 453 F.3d 724, 733 (6th Cir. 2006) (quoting *Harris v, Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). At this stage of the case, the Court must only assess whether the plaintiffs alleges "sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,'" that the plaintiffs were subjected to a hostile work environment based on sex. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The defendants argue that the conduct alleged does not arise to the level of actionable conduct and the allegations do not provide facts showing any claimed offensive conduct was because of the plaintiffs' sex. [Record no. 8-1, p. 8] However, the plaintiffs outline sufficient factual allegations from which this Court can draw a reasonable inference of a plausible claim that the defendants' conduct subjected the plaintiffs to a hostile work environment based on sex. The Complaint contains factual assertions that state a plausible claim for relief. It alleges that the plaintiffs were subjected to repeated verbal attacks, use of derogatory language, and sexually charged statements that are generally degrading to women. [Record No. 1, ¶¶ 21, 23, 38, 39, 125] It also provides that the conduct was repeated and contentious and of a sexual

- 15 -

nature. [*Id*. at 124] In summary, the plaintiffs have pleaded sufficient facts which give the defendants "fair notice of the basis for [the plaintiffs'] claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

### H. Recovery of Overtime Compensation

Defendants assert that the plaintiffs have failed to state the factual basis for this claim. It appears that they expect the plaintiffs to allege every date that work was performed, the rate they should have been paid, or how the hours were calculated to determine when overtime status was reached. [Record No. 8-1, pp. 9-10] But this level of detail is not required in a complaint. The defendants fail to recognize that he plaintiffs allege that once they were placed on hourly wage status, they were forced to work overtime without pay by routinely being required to stay thirty or more minutes past 5:00 p.m. to finish their work. [Record No. 1, ¶ 68] It is this factual basis on which the plaintiffs rely when they claim they were not fully compensated for every hour worked in excessive of forty hours per week. They have stated a plausible claim to overcome a motion to dismiss.

The defendants also contend that the claim is being brought in a collective action capacity and would require plaintiffs to consent pursuant to 29 U.S.C. § 216. However, as the plaintiffs correctly point out, it is clear from the face of the Complaint that Plaintiffs Clark and Estepp are asserting individual claims on their own behalf for recovery of overtime compensation. No plaintiff purports to represent anyone other than herself. As this is not a representative suit, there is no need for the plaintiffs to file written consent. *See Frye v. Baptist Memorial Hospital, Inc.*, 495 F.App'x 669, 645-76 (6th Cir. 2012; *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir. 1978.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Defendants' Motion to Dismiss [Record No. 8] is **GRANTED**, in part, and **DENIED**, in part.

2. Plaintiff Clark's claim of wrongful termination (Count II), and both plaintiffs' claims of destruction of evidence (Count VI) and civil conspiracy (Count VII), are **DISMISSED**, with prejudice. All other claims (Counts I, III, IV, V, VIII, and IX) remain pending.

This 13th day of December, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge