UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SARA CLARK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 17-273-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TEAMSTERS LOCAL UNION 651, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the motions for summary judgment filed by Defendants Michael Philbeck, Teamsters Local Union 651 ("Local 651") and International Brotherhood of Teamsters ("IBT") [Record Nos. 66 and 67]. For the reasons that follow, Defendant IBT's motion for summary judgment [Record No. 66] will be granted. Defendants Philbeck's and Local 651's motion for summary judgment [Record No. 67] will be granted, in part, and denied, in part.

## I.

Plaintiffs Sara Clark and Carol Estepp filed this action against Local 651, Philbeck, and IBT in June 2017. [Record No. 1] The Court later granted a motion to dismiss claims for wrongful termination, destruction of evidence, and civil conspiracy. [Record No. 12] The remaining claims include alleged violations of the Labor Management Reporting and Disclosure Act ("LMRDA"), the Fair Labor Standards Act ("FLSA"), Kentucky wage and hour statutes, invasion of privacy, defamation, and a hostile work environment in violation of Title VII of the 1964 Civil Rights Act.

Clark and Estepp are former employees of Teamsters Local Union 651. Clark was hired in 2008 as the Finance and Benefits Coordinator but was terminated in March 2017. [Record No. 1, p. 3] She paid union dues to IBT until her termination. [Record No. 74, p. 2] Estepp was hired as the Dues Coordinator with Local 651 in 2012. [Record No. 74, p. 20] She resigned in May 2018. [Record No. 74, p. 20] Estepp paid union dues to IBT until June 2017. [Record No. 1, p. 3] The plaintiffs were originally salaried employees, but were switched to an hourly rate in August 2016. [Record No. 1, p. 7] Local 651's President Philbeck had discretion to decide when the plaintiffs could take leave and he approved their overtime pay. [Record No. 1, p. 13] The plaintiffs allege they would clock out and continue to work or deliver packages on their way home. [Record No. 74-2, p. 69-70]

The plaintiffs claim that Philbeck used derogatory language against women and commented on their appearances throughout their time at Local 651. [Record No. 1, p. 4] Estepp testified that Philbeck would kiss her on the cheek every morning, asked her to sit on his lap, and called her "mom." [Record No. 74-2, p. 54-55, 95-97] The plaintiffs also allege that Philbeck used profanities when they disregarded his orders. [Record No. 1, p. 4] Further, the plaintiffs contend that they were fearful that Philbeck would harm or take personnel action against them. [Record No. 74-2, p. 91-93]

Clark testified that the situation escalated in June 2016. While Estepp looked on, Philbeck cursed at Clark and told her to leave Local 651 after she refused his request to modify his 401(k) contributions in an effort to hide money from his wife, whom he was divorcing. [Record No. 74-1, p. 157] Following this exchange, Clark sent a letter in June 2016 to the Local 651 Executive Board describing verbal abuse and a hostile environment at Local 651.

[Record No. 74-12]  But rather than apologize to Clark as he was instructed, the plaintiffs assert that Philbeck again verbally attacked and ridiculed her in the presence of other Local 651 officials.  [Record No. 1, p. 5]  Clark met with Local 651's Executive Board personnel on July 24, 2016, to provide information on Philbeck's alleged 401(k) contribution scheme.  [Record No. 74-13]  The plaintiffs also attended a meeting in July 2016 to provide information on Philbeck's supposed improprieties, including an inappropriate relationship with a female employee.  [Record No. 1, p. 5]  Clark submitted a second letter in October 2016 to the membership of Local 651, describing the situation at union and alleged retaliation, defamation, slander, and various wrongdoings occurring there.  [Record No. 74-19]

In the meantime, Philbeck became suspicious of potential financial improprieties committed by Clark.  Philbeck posted a letter on the Local 651's secretary's door in August 2016, alleging financial improprieties by Clark.  [Record No. 74-14]  Philbeck and Local 651's Vice President, Morse Minix, also discussed Clark's purported financial wrongdoing.  [Record No. 1, p. 7]  Philbeck again accused Clark of financial impropriety during Local 651's Executive Board meeting on September 30, 2016.  [Record No. 1, p. 8]  The Executive Board, however, issued a statement that no financial impropriety occurred and no investigation was necessary following the meeting.  [Record No. 74-16]  Philbeck nevertheless continued to make allegations regarding Clark's alleged financial improprieties from December 2016 to March 2017.  [Record No. 1, p. 9]  IBT audited Local 651 in early 2017 and found no malfeasance or illegal activity committed by Clark.  [Record No. 1, p. 9]  Additionally, Philbeck allegedly made comments about Estepp and Clark having personal relationships with male employees in the office.  [Record No. 74-1, p. 222-23, Record No. 74-2, p. 86-87]

IBT became involved in the dispute in September 2016, when business agent Matt Montgomery[1] wrote to IBT concerning the problems at Local 651. [Record No. 74-17] The plaintiffs, however, allege that no action was taken in response to the letter. [Record No. 1, p. 8] IBT sent representative Dennis Morgan to audit Local 651 in early 2017. [Record No. 74-31] Estepp stated in a letter to Morgan in April 2017 that she was afraid Philbeck would retaliate against her if she complained about his improper behavior and brought up Philbeck's comment that Estepp stay out of office politics. [Record Nos. 74-32; 74-2, p. 89-90] Morgan spent approximately one month at Local 651 during which time he spoke with employees regarding Local's compliance with financial and administrative procedures. [Record Nos. 74-31; 66-1, p. 8] Estepp met with Morgan briefly on April 13, 2017. [Record No. 66-1, p. 8] However, Morgan never talked with Clark because she had been terminated when he arrived to address the issues raised in the Montgomery letter. [Record No. 66-1, p. 8]

Following Clark's termination, Local 651's administrative assistant Stephanie Buchenroth used a lost password function and changed the passwords on Clark's Local 651 e-mail and Dropbox accounts. [Record No. 74-24, p. 23] Clark created the Dropbox account using her work e-mail. [Record No. 74, p. 34] Buchenroth subsequently searched the Dropbox and e-mail. [Record No. 67-1, p. 21] The Dropbox account contained both work-related and personal documents. [Record No. 74-1, p. 143-145] The Dropbox was accessed while IBT was on site at Local 651 performing an audit. [Record No. 1, p. 17-18]

---

[1] Sometimes the parties reference the business agent as "Mike Montgomery" and sometimes as "Matt Montgomery." However, the individual deposed was Matt Montgomery and the referenced letter was signed by Matt Montgomery. [Record No. 74-17] The Court assumes the parties intend to reference Matt Montgomery within the pleadings.

## II.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co*., 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52; *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes*, 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings; rather, it must come forward with probative evidence to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 58.

## III.

### a. Labor Management Reporting and Disclosure Act Claim

(i)      Local 651 and Philbeck

"Congress enacted Title I of the [LMRDA], 29 U.S.C. §§ 411-415, to provide union members with a right to freedom of expression that would in turn help ensure that unions would be democratically governed." *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997) (citing *Finnegan v. Leu*, 456 U.S. 431, 435-36 (1982)). Section 609 of the LMRDA makes it unlawful for a labor organization to fine, suspend, expel, or otherwise discipline a member for exercising any right she is entitled to under the Act. 29 U.S.C. § 529. Discipline "refers only to retaliatory actions that affect a union member's rights or status as a member of the union," and not to the individual's status as a union employee. *Finnegan*, 456 U.S. at 438.

*Finnegan* held that the plaintiff could not maintain an action for improper "discipline" under Section 609 because "discharge from union employment does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen to be union employees." *Id*. The Supreme Court explained that the LMRDA was enacted to protect union members, not union officers or employees. *Id*. at 437. Likewise, the Sixth Circuit has consistently maintained the distinction between an individual's role as a member of a union and his or her role as an employee or appointed officer. *See, e.g.*, *Cehaich v. Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America*, 710 F.2d 234, 238 (6th Cir. 1983).

In *Cehaich*, a union employee brought a claim under the LMRDA alleging that his right to free expression under Title I had been violated by his termination from union employment. 710 F.2d at 236; *see also Finnegan*, 456 U.S. at 439 (holding that "removal from appointive union employment is not within the scope of those union sanctions explicitly prohibited by 609"). *Cehaich* noted that member and employee roles were "distinct," and "union action

affecting one did not necessarily affect the other." 710 F.2d at 238. Since no fine, suspension, or disciplinary action had been taken against the plaintiff, he could not maintain an action under Section 609 because his "status as a member of the union remained unchanged after his dismissal from his position as a union officer." *Id.*

The Sixth Circuit, however, upheld a judgment in favor of a dismissed union business representative in *Thompson v. Office and Professional Employees Int'l Union, AFL-CIO*, 74 F.3d 1492, 1510 (6th Cir. 1996). The plaintiff was involuntarily issued a union membership withdrawal card immediately after his termination, without notice or the opportunity to be heard. *Id.* at 1499. Unlike *Cehaich,* the plaintiff in *Thompson* was expelled from union membership immediately after his termination from his position in the union. This equated to discipline because it "affected his right to fully enjoy the rights and privileges of union membership." *Id.* at 1503.

In the present case, Clark claims that she was terminated in violation of Section 609 and Estepp claims that the defendants violated the LMRDA when they advised her to stay out of "politics." [Record No. 1, p. 4] But the defendants argue that the plaintiffs did not automatically lose their union memberships and associated rights when their employment ended. [Record No. 77, p. 6] Instead, they contend that Clark lost her union membership because she voluntarily chose not to pay dues for three months, while Estepp voluntarily withdrew from membership when she resigned. [Record No. 77, p. 6; Record No. 77-1, p. 2-6] The plaintiffs assert in their response brief that they lost their union membership as a direct result of being terminated. However, they were not subjected to internal disciplinary procedures or any international union charges that would have led to the termination of their

union memberships. [Record No. 74, p. 24; Record No. 77, p. 6] The plaintiffs provide no support other than their statements in their response to the summary judgment motions that they lost their union membership as a result of their employment with the union ending.

As noted earlier, status as a union member and status as an employee of the union are distinct. *Cehiach*, 710 F.2d at 238. Termination of a union employee alone does not violate the LMRDA. *Finnegan*, 456 U.S. at 441. The plaintiffs fail to provide any evidence that their union membership was terminated as a direct result of their termination. Instead, their union membership was voluntarily terminated when Clark stopped paying her dues and Estepp resigned from her position at Local 651. [Record No. 77-1, p. 2-6; Record No. 78-1, p. 1-3] Estepp requested and was issued a voluntary withdrawal card after she resigned. [Record No. 78-1, p. 3; 78-4] And Clark stopped paying her dues in April 2017 and was placed on suspension with the union in August 2017 because she failed to pay dues for three consecutive months. [Record No. 77-1, p. 6] The defendants have come forward with proof indicating that the plaintiffs' union membership was terminated for other reasons than as a direct, involuntary result of their termination and the plaintiffs have failed to rebut these reasons.

Contrary to her assertions, Clark is a confidential employee who falls squarely within the limits of *Finnegan*. While discharge of a union member from union office did not violate 29 U.S.C. § 412, *Finnegan* left open the question of whether a different outcome may result for "cases involving nonpolicymaking and nonconfidential employees" *Id.* at 441, n. 11. But Clark is similar to the plaintiff in *Brewer v. General Drivers, Warehousemen & Helpers Local*, who was a bookkeeper with access to confidential information. 190 F. Supp. 2d 966, 972 (W.D. Ky. 2002). Clark managed payroll, gathered information for tax returns, prepared

internal charges, and had access to personnel files.  [Record No. 67-4, p. 33-38, 53, 63]  Thus, based on Clark's access to confidential information, she does not fall within the exception to the *Finnegan* decision.  Therefore, Local 651 and Michael Philbeck are entitled to summary judgment on the plaintiffs' LMRDA claim under Section 609 because the defendants provided alternative reasons for the plaintiffs' termination of union membership and the plaintiffs have failed to rebut their explanations.  Additionally, Clark was a confidential employee and fits within the decision in *Finnegan*.

Section 102 of the LMRDA provides a right of action to union members "whose rights … have been infringed …"  *Harvey v. Hollenback*, 113 F.3d 639 (6th Cir. 1997) (quoting 29 U.S.C. 412).  The plaintiffs claim their rights were infringed here because they were disciplined for reporting Philbeck's harassing and threatening behavior.  "[A] claim may arise from the dismissal of a union employee or official if it were 'part of a purposeful and deliberate attempt to … suppress dissent within the union."  *Harvey*, 113 F.3d at 643 (quoting *Sheet Metal Workers' International Association v. Lynn*, 488 U.S. 347 (1989)).  But courts must still distinguish between an individual's role as a union member and his or her role as a union employee in evaluating a claim under Section 102.  *Id*.  "Claims of infringement are judged by reference to the LMRDA's basic objective: to ensure that unions are democratically governed, and responsive to the will of the union members"  *Id*. (citations and internal quotations omitted).  Generally, plaintiffs face an uphill battle in proving a deliberate scheme to suppress dissent within the union.  *Id*. at 644.

Despite the plaintiffs' substantial testimony regarding internal strife within Local 651, they fail to offer sufficient evidence of a deliberate scheme to suppress dissent within the union

to avoid summary judgment. The plaintiffs voiced their concerns as union members in multiple letters to the Executive Board and to the IBT. [*See, e.g.*, Record No. 74-12.] Clark and Estepp both noted that they continued to vote in elections, were able to attend and speak at membership meetings, and were able to meet with other union members to discuss problems at Local 651. [Record No. 67-4, p. 207-212; Record No. 67-5, p. 129, 131, 140, 142] Further, Clark's loss of employment as a union employee is distinct from her role as a union member. Therefore, Local 651 and Philbeck are entitled to summary judgment on the plaintiff's LMRDA claims.

    (ii)    IBT

IBT claims that they did not violate the plaintiffs' rights under the LMRDA. An international union and its affiliated local unions are legally distinct entities and should not be treated the same for liability purposes. *Coronado Coal v. United Mine Workers of America*, 268 U.S. 295, 304-05 (1925). A union may only be held responsible if it authorized, instigated, participated in, or ratified the actions of its agents. *North American Coal Co. v. U.M.W.*, 497 F.2d 459, 466-67 (6th Cir. 1974). Common law agency principles govern whether an international union is liable for the action of its local affiliates in violating the LMRDA. *See Shimman v. Frank*, 625 F.2d 80, 97-99 (6th Cir. 1980), *overruled on other grounds by Shimman v. Int'l Union of Operating Eng'rs, Local 18*, 744 F.2d. 1226 (6th Cir. 1984). The Court looks at the international's actual conduct to determine an international union's liability for its affiliates' actions. *Id*. at 97.

In this case, there is no evidence that IBT instigated, participated, or ratified the actions of Local 651. The plaintiffs argue that IBT ratified the actions Local 651 and Michael Philbeck

by failing to help the plaintiffs with their complaints. However, an international union's failure to act is insufficient to ratify the actions of the local affiliate. *Id.* (explaining the international must take affirmative action indicating approval of the behavior of the local); *see also Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1289 (3d. Cir. 1991) (explaining an international union's failure to act after investigating a complaint does not constitute ratification of the affiliates actions).

IBT received a letter in September 2016 from Montgomery detailing problems at Local 651. [Record No. 74-17] IBT performed a financial audit at Local 651 in early 2017. [Record No. 1, p. 9] Clark was terminated in March 2017 and IBT performed another audit shortly thereafter. [Record No. 1, p. 9] IBT appointed Morgan to investigate the claims set out in Montgomery's letter. [Record No. 66-1, p. 25] Estepp provided Morgan with a letter discussing her fear that Philbeck would retaliate if she complained of his behavior. [Record No. 74-32] Estepp alleges IBT and Representative Morgan did not take any action in response to her letter. [Record No. 1, p. 11] However, Morgan had a limited term of appointment and attempted to address the issues outlined in Montgomery's letter. [Record No. 66-8, p. 14, 44-46] Morgan used Montgomery's letter as a template for interviewing members of Local 651 to determine whether there were any administrative or procedural violations occurring at Local 651. [Record No. 66-8, p. 8, 14] The plaintiffs argue that the IBT representatives were brought in to blindly support Philbeck's decisions, but they do not point to any record evidence supporting this assertion. [Record No. 74, p. 28] IBT's failure to remedy Local 651's plethora of internal issues does not constitute evidence that they ratified the actions of the Local.

The plaintiffs contend that Local 651 and IBT are either a single-employer or a joint-employer to hold them both liable and to consider them as one enterprise for purposes of calculating the number of employees that worked at Local 651. [Record No. 74, p. 37-39] They argue that Local 651 and IBT are a single-employer because they are "so interrelated that all employees of one can be attributed to the other." [Record No. 74, p. 37] They assert in the alternative that, IBT exercises enough control over Local 651 to qualify as a joint-employer. [Record No. 74, p. 39] The factors to be considered in deciding whether two entities are a joint-employer or a single-employer are: "interrelation of operations, common management, centralized control of labor relations, and common ownership." *Radio Union v. Broadcast Service of Mobile, Inc*., 380 U.S. 255, 256 (1965) (considering the factors to decide if the entities are a single-employer); *see also Int'l Longshoremen's Ass'n v. Norfolk S. Corp*. 927 F.2d 900, 902 (6th Cir. 1991) (considering the factors to decide if the entities are a joint-employer).

The Local 651 Executive Board runs operations for Local 651, officers of the Local are elected by the membership, the Local Executive Board establishes internal policies of the Local, and no Local employee is appointed or employed by IBT. [Record No. 77, p. 3] As previously noted, the IBT and its local affiliates are distinct entities. IBT did not exercise enough control to consider Local 651 and IBT either a single-employer or a joint-employer. In short, there is no genuine dispute of material fact regarding the plaintiffs' LMRDA claim against the IBT. IBT is entitled to summary judgment on this claim.

**b. Fair Labor Standards Act and Kentucky Wage & Hour Statutes Claim**

(i)      Local 651 and Philbeck

The defendants next allege there is no genuine dispute of material fact regarding the plaintiffs' claim that they were forced to work overtime without pay. The FLSA prohibits employers from allowing non-exempt employees to work longer than forty hours a week "unless such employee receives compensation for his employment in excess of the hours specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Kentucky's wage and hour laws also require employers to compensate non-exempt employees at a rate of not less than one and one-half their hourly wages for working longer than forty hours in a week. Ky. Rev. Stat. § 337.285. The overtime provisions of the FLSA and Kentucky wage and hour laws are analogues and analyzed in the same manner. *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n*, 212 S.W.3d 89, 92 (Ky. 2006).

The plaintiffs assert that they routinely had to stay after 5:00 p.m., clock out and continue to work, and drop off packages on their way home from work. [Record No.74-2, p. 65, 69-70] They provide time cards reflecting that they worked more than forty hours a week but were not provided overtime pay. [Record No. 74-42] The defendants argue that the time worked over forty hours was *de minimis*. [Record No. 67-1, p. 14-15]

The United States Supreme Court has recognized that a *de minimis* rule applies to FLSA overtime cases. In *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 692 (1946), *overruled on other grounds by Integrity Staffing v. Busk*, 135 S. Ct. 513, 516 (2014), the Court explained that,

> [w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is

required to give up a substantial measure of his time and effort that compensable working time is involved.

*See also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012).

After acknowledging that the *de minimis* rule likely applied to at least some of the time in dispute, the *Anderson* Court remanded the case because "the precise scope of that application can be determined only after the trier of facts makes more definite findings as to the amount of . . . time in issue." *Anderson*, 328 U.S. at 692. It is up to the fact-finder to decide whether time over forty hours a week is *de minimis*. *See Franklin v. Kellogg Co.*, 619 F.3d 604, 620 (6th Cir. 2010); *Anderson,* 328 U.S. at 692.

The defendants further argue that Clark and Estepp did not follow the procedure for requesting overtime pay. [Record No. 67-1, p. 15] Under the FLSA, "if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876. However, "if an employer knows or has reason to believe that a worker is continuing to work then the time is working time." *Id*. at 873 (citations and internal quotations omitted). An employer must have actual or constructive knowledge of the uncompensated work. *Id*. at 876 (referencing *Wood v. Mid-Am. Mgmt. Corp*. 192 F. App'x 378, 381 (6th Cir. 2006)). Here, there are time cards and deposition testimony that put in issue whether the defendants knew about the uncompensated time. [Record No. 74-42; Record No. 74-2, p. 64, 60-70]

An employee who brings suit under the FLSA "has the burden of proving that he performed work for which he was not properly compensated." *Anderson*, 328 U.S. at 686-87.

However, when an employer has not maintained proper and accurate records of its employees' time, the Supreme Court has held that,

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. "Unless the employer can provide accurate estimates, it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence as to the amount of time spent in these activities in excess of the productive working time." *Id.* at 693; *see also O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

The plaintiffs provided time cards indicating they worked past 5:00 p.m. and that they sometimes had to work after clocking-out. [Record No. 74-42; Record No. 74-2, p. 64, 60-70] As the record presently exists, there is a genuine dispute of material fact regarding the extra time the plaintiffs worked and whether the time is *de minimis*. Therefore, summary judgment is not appropriate as to this issue.

(ii)   IBT

Both the FLSA and the Kentucky wage and hour statutes require that, for a defendant to be liable, it must be an "employer" within the meaning of the statutes. Ky. Rev. Stat. § 337.285(1); 29 U.S.C. § 207(a)(1). IBT was not the plaintiffs' "employer" for purposes of calculating and approving their wages. An employer is defined as "any person, either individual, corporation, partnership, agency, or firm who employs an employee" under Ky.

Rev. Stat. § 337.010. Further, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization" under the FLSA. 29 U.S.C. § 203(d). "The International Union is a separate body from the local. The acts of the local and its agents cannot automatically be imputed to the International." *Shimman,* 625 F.2d at 95.

Here, IBT did not employ the plaintiffs, did not convert them from hourly to salaried employees, and did not assign or direct their work. [*See, e.g*, Record No. 66-5, p. 12] Either Philbeck or a member of Local 651 established the plaintiffs' hours, approved their time cards, and signed their paychecks. [*See, e.g*., Record No. 66- 5, p. 2, 12; Record No. 66-4, p. 30.] The plaintiffs provide no evidence that IBT exercised control over their wages and hours to impute the decisions of Local 651 to IBT. Only Local 651 had control over setting and monitoring the plaintiffs' hours and wages. As a result, IBT is entitled to summary judgment on Count IX.

### c. Invasion of Privacy Claim

(i)     Local 651 and Philbeck

Administrative assistant Stephanie Buchenroth accessed Clark's computer after her termination and used a lost password function to recover and review the files in Clark's Dropbox[2] to search for work-related files. [Record No. 74-24] While Clark contends that the

---

[2] Dropbox's website describes the product as "a home for all your work" where "[y]out can store and share files, collaborate on projects, and bring your best ideas to life – whether you're

Dropbox was her personal account, the account was linked to her Teamsters e-mail address to which she lost access when terminated.  [Record No. 74, p. 34; Record No. 74-1, p. 143-145]  Clark believes that Buchenroth "hacked" into her Dropbox account by using the lost password function.  [Record No. 74, p. 34]  Local 651, however, takes the position that it "had the right to discontinue Clark's access to that e-mail account at any time, which includes Local's 651's right and ability to change Clark's e-mail password."  [Record No. 67-1, p. 22]

Under the facts presented, Clark cannot prevail on theories that Buchenroth's actions constitute an intrusion upon her seclusion and unlawful access to her computer in violation of Kentucky statutes.  This Court has previously relied on the definition of intrusion upon seclusion stated in *Smith v. Bob Smith Chevrolet, Inc*., 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003), which is "intentional intrusion, physical or otherwise, upon the solitude or seclusion of another … if the intrusion would be highly offensive to a reasonable person."  To prevail, a plaintiff must demonstrate "(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, and (3) which is highly offensive to a reasonable person." *Id*; *see also Wiles v. Ascom Transp. Sys., Inc*., 478 F. App'x 283, 293-94 (6th Cir. 2012).  "What constitutes a private matter is dependent upon whether the plaintiff has a reasonable expectation of privacy in the subject information."  *Wiles*, 478 F. App'x 478 at 294 (*citing Webb v. Bob Smith Chevrolet, Inc*., 2005 U.S. Dist. LEXIS 21483, at *6 (W.D. Ky. 2005).  Potential intrusions include "investigation or examination into [her] private concerns, as by

working alone or as part of a team." www.dropbox.com/features (last visited October 19, 2018).

opening [her] private and personal mail, searching [her] safe or wallet, [or] examining [her] private bank account."  Restatement (Second) of Torts § 652B, cmt. B (1977).

While not explicitly addressed by the Sixth Circuit, district courts have held that an employee does not have a reasonable expectation of privacy in e-mails sent or received using a work e-mail address.  *See Garrity v. John Hancock Mut. Life Ins. Co*., 2002 U.S. Dist. LEXIS 8343, at *5 (D. Mass. 2002) (explaining even in the absence of a company e-mail policy, employees did not have a reasonable expectation of privacy in their work e-mail); *Smyth v. Pillsbury Co*., 914 F. Supp. 97 (E.D. Pa. 1996) (holding no reasonable expectation of privacy in voluntary e-mail communications made by an employee, notwithstanding any assurance that e-mails would not be intercepted by management).  If individuals do not have a reasonable expectation of privacy in their work e-mails, then it logically follows that individuals do not have a reasonable expectation of privacy in a Dropbox account that is tied to their work e-mail and that they lose access to if they lose access to the e-mail.

In *Garrity*, the plaintiffs admitted that they knew the defendant employer had the ability to access e-mails over the company's intranet system.  2002 U.S. Dist. LEXIS 8343, at *5.  However, they argued that their e-mails were private because they were password protected and stored in personal folders.  *Id*.  The court rejected this argument, concluding that the plaintiffs had no reasonable expectation of privacy in their work e-mails.  *Id*. at 6.  It further explained that, even if the plaintiffs had a reasonable expectation of privacy in their work e-mails, the defendant had a legitimate business interest in monitoring the e-mails to keep the workplace free of harassment.  *Id*.

For the same reasons, Clark does not have a reasonable expectation of privacy in the Dropbox account, which stored a mixture of work-related and personal documents and was tied to her work e-mail.  Further, even if she did have such an expectation, Local 651 had a legitimate business purpose to recover documents related to Local 651's operations from Clark's e-mail and Dropbox account.

The plaintiff also argues that, by accessing her Dropbox account, the defendants unlawfully accessed her computer.  Clark relies on Kentucky's negligence *per se* statute and the state statute pertaining to the unlawful access to a computer.  Ky. Rev. Stat. §§ 434.845-.853; 446.070.  To establish unlawful access, a plaintiff must establish that "a person … without the effective consent of the owner, knowingly and willfully, directly or indirectly accesses, causes to be accessed, or attempts to access any computer software, computer program, data, computer, computer system, computer network, or any part thereof[.]"  Ky. Rev. Stat. § 434.845.  But, as previously explained, Clark does not have a reasonable expectation of privacy in the Dropbox account, and there is no violation of the statute.

There is no genuine dispute of material fact with respect to Clark's invasion of privacy claim and Local 651 and Philbeck are entitled to summary judgment on  Count IV and Count V.

(ii)    IBT

IBT is entitled to summary judgment regarding Clark's invasion of privacy claim.  "Common law theories of vicarious liability may apply to render an international union liable for the tortious acts of its local union." *Blesedell v. Chillicothe Tel. Co.*, 2013 U.S. Dist. LEXIS 166076, at *11 (S.D. Ohio 2013) (referencing *Alexander v. Local 496, Laborers' Int'l Union*

*of North America*, 177 F.3d. 394, 409 (6th Cir. 1999). However, a union may only be held responsible if they authorized, instigated, participated in, or ratified the actions of its agents. *North American Coal Co. v. U.M.W.*, 497 F.2d 459, 466-67 (6th Cir. 1974). Similarly, "[t]he fact that an officer of the local union may have transgressed does not mean that the International is liable." *Shimman*, 625 F.2d at 95; *see also United Mine Workers of America v. Coronado Coal Co.,* 259 U.S. 344 (1921).

Clark has not identified any fact that would support a finding in her favor regarding this claim. A Local 651 employee accessed Clark's computer and Dropbox. [Record No. 74-24] The alleged invasion of privacy was not at the direction of IBT and it did not ratify the actions of the Local 651 employees. Clark argues that the alleged invasion of privacy occurred while IBT was auditing Local 651. [Record No. 1, p. 10] However, during this audit, Local 651 remained in control and continued to direct its employees. *See Sine v. Local No. 992, International Brotherhood of Teamsters*, 730, F.2d 964, 966 (4th Cir. 1984) (aiding in discharging local duties is not enough to create an agency relationship between the International and the Local). The plaintiffs have produced no evidence to establish that IBT authorized, instigated, participated in, or ratified the local's employees' access of Clark's computer.

### d. Defamation Claim

(i)    Local 651 and Philbeck

The plaintiffs have demonstrated a genuine dispute of a material fact regarding the claim for defamation. To establish such a claim, a plaintiff must show:

(i) a false and defamatory statement concerning another; (ii) an unprivileged publication to a third party; (iii) fault amounting at least to negligence on the

part of the publisher; and (iv) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (citing Restatement (Second) of Torts § 558 (1977). Defamatory language is published when it is intentionally or negligently communicated to someone other than the defamed individual. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W. 882, 884 (Ky. 1981). The alleged defamatory statements made about Clark involve suspected financial improprieties she committed while working at Local 651 and that she was in a romantic relationship with Local 651 Secretary Michael Watson. [Record No. 74-2, p. 222-25] The alleged defamatory statements made regarding Estepp were about her being in a "sexual" relationship or having an "affair" with business agent Matt Montgomery of Local 651. [Record No. 74-2, p. 86]

Estepp testified that she was told by two Local 651 employees that Philbeck advised the Local 651 Executive Board that she and Matt Montgomery were "having an affair." [Record No. 74-2, p. 86, 87] Philbeck testified that he never used the term sexual to describe their relationship and that "Carol told me herself that her and Matt were going out; that Matt Montgomery, business agent for the local, had been coming to her house bringing her flowers; they were going to dinner and movies." [Record No. 74-6, p. 117] The defendants maintain that there was no false statement made about Estepp.

The defendants also argue that the statements related to Clark are not defamatory because they are privileged. While communications regarding an individual's unfitness to perform a job are actionable *per se* defamation, such communications may be permissible when there is a common interest in allowing the statement. *Toler*, 458 S.W.3d at 282-283. Additionally, statements in the employment context are subject to a qualified privilege. *Id.* at

-21-

283. A qualified privilege means that "false and defamatory statements will not give rise to a cause of action unless maliciously uttered." *Id*. The burden is on the plaintiff to prove actual malice or abuse of the qualified privilege. *Id*. at 284. Abuse of the qualified privilege can occur when:

> (1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.

*Id*.

*Toler* explained that whether a defendant abused his qualified privilege is generally a fact question. *Id*. at 285. However, summary judgment remains an option when "the plaintiff fails to adduce such evidence sufficient to create a genuine issue of fact, qualified privilege remains purely a question of law under the summary judgment standard." *Toler,* 458 S.W. at 284. To prove malice, plaintiffs cannot rely on the mere falsity of the comments themselves. Instead, they must produce independent evidence that malice existed. *Harstad v. Whiteman*, 338 S.W. 3d 804, 811 (Ky. Ct. App. 2011).

Philbeck was protected by qualified privilege because the statements were made in the employment context, where he voiced his concerns about other employees. [Record No. 78, p. 11] However, the plaintiff claims that Philbeck spoke with reckless disregard and thus abused his privilege. [Record No. 74] "Reckless disregard means the speaker either (1) entertained serious doubts as to the truth or falsity of the statements or (2) had a high degree of awareness as to whether the statement was probably false." *Toler*, 458 S.W.3d at 289.

There is a genuine dispute of material fact regarding the purpose of the statement and whether actual malice exists.

Philbeck contends that Clark's financial improprieties and resistance to changing banks, raised suspicions over her conduct as an employee. [Record No. 78, p. 11-12] However, the Local 651 Executive Board issued a letter stating Clark was not actually under investigation and was not suspected of committing any financial improprieties. [Record No. 1, p. 8] Clark argues that Philbeck knew that the statements were false, but used them as a pretext to fire her and spread rumors about her. [Record No. 74, p. 46] There is a factual dispute over whether Philbeck abused his qualified privilege in making the statements about Clark's alleged financial improprieties. The plaintiff has produced enough evidence of a factual dispute over the purpose of the statements about Clark's alleged financial improprieties.

However, the plaintiffs have not produced sufficient evidence to survive summary judgment regarding the alleged personal relationships they allegedly were having with other employees.

> Spoken words are slanderous *per se* only if they impute crime, infectious disease, or unfitness to perform duties of office, or tend to disinherit him, written or printed publications, which are false and tend to injure one in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame, are libelous *per se*. All other defamatory statements are merely libelous or slanderous per quod, and special damages, i.e., actual injury to reputation, must be affirmatively proved if a comprehension of the defamatory nature of the written or spoken words requires extrinsic evidence of context or circumstances.

*Stringer*, 151 S.W.3d at 795. Estepp claims that there is contradictory testimony regarding whether the statement was a "sexual" relationship or an "affair." [Record No. 74, p. 30 (referencing the Watson Deposition, Groves Deposition, and the Estepp Deposition)] The defendants contend that the statements about Estepp's relationship with Matt Montgomery are

not defamatory.  Vice President Morse Minix stated that "it was common knowledge to the whole staff at the 651 that [Estepp] and Matt Montgomery [had] some type of a relationship outside of work."  [Record No. 67-7, p. 9]  Estepp contends that the use of the word "affair" was defamatory and designed to undermine her.  [Record No. 74-2, p. 86]  Estepp never explicitly denies that they had some type of relationship outside of work, she just takes issue with the characterization of the relationship.   Further, Estepp only says that the statements were told to her, never that the statements were written down.  [Record No. 74-2, p. 86-87] The statements do not fall into one of the four categories of slander *per se* statements.  *Stringer*, 151 S.W.3d at 795.

Next, Estepp fails to provide evidence of actual injury to her reputation by people discussing whether she was "having an affair" with Montgomery.  Similarly, Clark fails to provide any evidence of actual injury to her reputation regarding the claim that she was in a romantic relationship with Watson.  [Record No. 74-1, p. 222-23]

In summary, Local 651 and Michael Philbeck are entitled to summary judgment regarding Estepp's defamation claim, but there is a genuine dispute of material fact regarding Clark's defamation claim for the financial improprieties, but not as to an alleged relationship with Michael Watson.

(ii)    IBT

The defamation claim against IBT is unfounded.  As noted above, "[t]he fact that an officer of the local union may have transgressed does not mean that the International is liable." *Shimman*, 625 F.2d at 95.   Also, "[t]he International Union is a separate body from the local. The acts of the local and its agents cannot automatically be imputed to the International."  *Id*.

at 97. The statements the plaintiffs claim were defamatory are alleged to have been made by Philbeck, not anyone at IBT. There is no suggestion that the statements were ratified or condoned by any member of IBT. And no member of the IBT was present when any of the alleged defamatory statements were made. [Record No. 66-1, p. 17] Therefore, IBT is entitled to summary judgment on Count III.

### e. Title VII Claim

(i)    Local 651 and Philbeck

"A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors*, 187 F.3d 553, 560 (6th Cir.1999). To establish a prima facie case of a hostile work environment based on sex, a plaintiff must demonstrate that: (i) she is a member of protected class; (ii) she was subjected to unwelcome sexual harassment; (iii) the harassment was based on her sex; (iv) the harassment created a hostile work environment; and that (v) the employer is vicariously liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). The alleged actions must "meet both an objective and a subjective test, in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).

"A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Randolph*, 453 F.3d at 733 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "The Supreme Court has consistently held that 'simple teasing, offhand comments, and isolated

incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001) (quoting *Faragher*, 524 U.S. at 788). The Court considers the totality of the circumstances when deciding whether a hostile work environment existed. *Harris*, 510 U.S. at 23. Factors to consider include: (i) the frequency of the discriminatory conduct, (ii) the conduct's severity, (iii) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (iv) whether the conduct unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23.

The defendants argue that the plaintiffs cannot establish a claim of hostile work environment under Title VII because Local 651 is not an employer as defined by Title VII. A defendant must be an employer within the meaning of the statute for liability to attach. 42 U.S.C. § 2000e. An "employer" is defined under Title VII as "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person …" 42 U.S.C. § 2000e(b). The defendants argue that Local 651 does not have the requisite number of employees to fall under the definition of employer in Title VII. [Record No. 67-1, p. 36] The plaintiffs, on the other hand, argue that they miscalculated the number of individuals who worked at Local 651. [Record No. 74, p. 36-37] But even if Local 651 did have the requisite number of employees, the plaintiffs' claim would fail because they have not established a prima facie case of a hostile work environment.

The comments made by Philbeck were not sufficiently severe or pervasive to be actionable under Title VII. The plaintiffs' depositions and interrogatory responses do not

identify multiple specific instances where they were subjected to a hostile work environment. The specific instances the plaintiffs mention in support of their claim include being called a "bitch," Philbeck stating that the dress code for a work event was one "of those Victoria's Secret nighties," Philbeck calling Estepp "mom" and kissing her on the cheek, Philbeck asking Estepp to go horseback or motorcycle riding, and an incident at a charity event where men wore women's clothing over top of their clothing during the golf game. [Record No. 1, p. 4] "Ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing" do not constitute harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). These incidents, taken together, do not rise to the level of "severe or pervasive." Aside from a few isolated instances, the other allegations by Clark and Estepp provide no indication of the time, place, or context of the remarks. Further, the plaintiffs fail to demonstrate that the alleged comments were so frequent as to qualify as severe or pervasive.

The defendants also argue that there is no individual liability for Michael Philbeck. [Record No. 67-1, p. 36] Title VII only imposes restrictions on "employers." Under Title VII, an "employer" is an entity engaged in an industry that affects interstate commerce and has more than fifteen employees. 42 U.S.C. § 2000e(b). Generally, individual employees do not meet the definition of employer under Title VII. "An individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997).

Philbeck does not meet the statutory definition of "employer" and cannot be held individually liable under Title VII. The Sixth Circuit has held that "despite the express use of

the word 'agent' in the statute, Title VII does not create individual liability for individuals in supervisory positions." *Akers v. Alvey*, 338 F.3d 491, 500 (6th Cir. 2003) (citing *Wathen v. Gen. Electric Co.,* 115 F.3d 400 (6th Cir. 1997)).

      (ii)    IBT

     While the plaintiffs filed a charge of discrimination with the Kentucky Commission on Human Rights against Local 651, they failed to file similar charges against IBT. [Record Nos. 67-13, 67-14] "Filing an EEOC charge against a party is a necessary prerequisite to suit . . . unless there is a clear identity of interest between it and a party named in the EEOC charge or it has unfairly prevented the filing of an EEOC charge." *Jones v. Truck Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984).[3]

     IBT does not have a sufficient identity in interest for the plaintiffs to circumvent the prerequisite of naming them in the EEOC complaint. *See Brooks v. Breads of the World, LLC*, 2011 U.S. Dist. LEXIS 137389 *1, *12 (E.D. Ky. 2011) (finding that failing to list the parent

---

[3] The Sixth Circuit looks at four factors in deciding whether an unnamed party has a sufficient identity in interest:

    (1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
    (2) Whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
    (3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
    (4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Romain v. Kurek*, 836 F.2d 241, 246 (6th Cir. 1987) (citing *Glus v. G.C. Murphy Co.,* 562 F.2d 880 (3d Cir. 1977)).

company in her EEOC complaint failed to put the parent company on notice, thus, the plaintiff had not exhausted her administrative remedies).  IBT's interests and the interests of Local 651 and Michael Philbeck are different because they operate as separate entities. Additionally, IBT may have been prejudiced by not being able to represent their interests in front of the EEOC. The plaintiffs have not exhausted their administrative remedies as to IBT and it is entitled to summary judgment on this claim.

## III.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1. Defendants Local 651 and Philbeck motion for summary judgment [Record No. 67] is **GRANTED**, in part, and **DENIED**, in part.

2. Plaintiff Clark's claim for violations of the LMRDA (Count I), invasion of privacy (Count IV), unlawful access to a computer (Count V), and hostile work environment (Count VIII) are **DISMISSED**, with prejudice.

3. Plaintiff Clark's claim against Defendants Local 651 and Philbeck for defamation based on statements of financial improprieties (Count III) remains pending. However, her defamation claim based on statements of an alleged relationship with Michael Watson is **DISMISSED**, with prejudice.  Plaintiff Clark's claim for recovery of overtime compensation under the FLSA (Count IX) remains pending.

4. Plaintiff Estepp's claims for a violation of the LMRDA (Count I), defamation (Count III), and hostile work environment (Count VIII) are **DISMISSED**, with prejudice.

5.    Plaintiff Estepp's claim for recovery of overtime compensation under the FLSA remains pending (Count IX).

6.    Defendants IBT's motion for summary judgment [Record No. 66] is **GRANTED**.  Defendant IBT is **DISMISSED** as a party to this action.

Dated: October 24, 2018.

Signed By:

*Danny C. Reeves*

United States District Judge